UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MEGAN GOODEILL, on behalf of Minor A.M.F.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:21-cv-00242-CDB (SS)

ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND (3) REMANDING ACTION FOR FURTHER PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)

(Docs. 27, 31)

Megan Goodeill on behalf of her minor daughter A.M.F. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for disability insurance benefits and supplemental security income benefits under the Social Security Act. (Doc. 4). The matter is before the Court on the certified administrative record (Doc. 18) and the parties' briefs, which were submitted without oral argument. (Docs. 27, 31).[1] Plaintiff asserts the Administrative Law Judge ("ALJ") failed to properly analyze non-medical opinions and erred in concluding A.M.F. is less than markedly impaired in the domain of attending and completing tasks. (Doc. 27 at 2, 8-12). Plaintiff requests the decision of the Commissioner be vacated and the case be remanded for

[1] Both parties have consented to the jurisdiction of a magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 15).

further proceedings including a *de novo* hearing and new decision. *Id*. at 11.

## I. BACKGROUND[2]

In February 2017, an application for supplemental security income was protectively filed on behalf of Plaintiff, who was six years old at the time, alleging a period of disability beginning on August 20, 2016. (Administrative Record ("AR") 91, 191). Plaintiff claimed disability due to issues with attention-deficit/hyperactivity disorder ("ADHD"), schizophrenia, sensory processing disorder, and "hearing ear." *Id*. at 91. The Commissioner denied Plaintiff's application initially and again on reconsideration. *Id*. at 91-116, 118-22, 127-31. Plaintiff submitted a written request for a hearing by an ALJ. *Id*. at 135-49. On May 22, 2019, Plaintiff, represented by counsel, appeared in person for a hearing before ALJ Shiva Bozarth. *Id*. at 39-90. Additionally, Faren Ray Akins, Ph.D., appeared as a medical expert, and Megan Goodeill appeared as a witness. *Id*. at 46-77, 176-77. On September 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 18-33.

On June 8, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. *Id*. at 4-9. Plaintiff filed this action on February 22, 2021, seeking judicial review of the denial of his application for benefits and a motion to appoint Megan Goodeill as guardian *ad litem*. (Docs. 1-2). The following day, Plaintiff filed a first amended complaint and an amended motion to appoint Megan Goodeill as guardian *ad litem*. (Docs. 4, 6). The Commissioner lodged the administrative record on February 25, 2022. (Doc. 18). Plaintiff filed an opening brief on July 7, 2022. (Doc. 27). On October 5, 2022, Defendant filed a responsive brief. (Doc. 31).

## II. THE DISABILITY STANDARD

An individual under the age of eighteen will be deemed disabled if she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906.

---

[2] The relevant hearing testimony and medical record were reviewed by the Court and will be referenced in the opinion as necessary to this Court's decision.

The Social Security regulations provide a three-step process in determining whether a child is disabled. *See* 20 C.F.R. § 416.924. First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(a). If the child is not engaged in substantial gainful activity, then the analysis proceeds to step two, which requires the ALJ to determine whether the child's impairment or combination of impairments is severe. *Id*. The child will not be found to have a severe impairment if it constitutes a "slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). However, if there is a finding of severe impairment, the analysis proceeds to the final step. Step three requires the ALJ to determine whether the impairment or combination of impairments "meets, medically equals or functionally equals" the severity of a set of criteria for an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(d).

If an impairment does not meet the requirements of, or is not medically equal to, a listed impairment, the claimant may still be disabled if his impairment or combination of impairments is found to be "functionally equivalent" to a listed impairment. In child disability cases, a "whole child approach" is used to determine functional equivalence. *R.S. by & Through Herrera v. Berryhill*, 357 F. Supp. 3d 1033, 1037 (C.D. Cal. 2019). That is, the ALJ considers all of the child's activities, "everything [the child does] at home, at school, and in [the] community." 20 C.F.R. § 416.926a(b). Functional equivalence is measured by assessing the claimant's ability to function in the following six domains, which are "broad areas of functioning intended to capture all of what a child can or cannot do": (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). Limitations in functioning must result from the child's medically determinable impairments. *See* 20 C.F.R. § 416.924a (describing considerations for determining disability for children). An impairment or combination of impairments is functionally equivalent to a listing if it results in "marked" limitations in two areas, or an "extreme" limitation in one area of functioning. 20 C.F.R. § 416.926a(a). Specifically:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i). A child of any age will be found to "have a 'marked' limitation when [they] have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [their] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii). Standardized testing provides important information about deficits in development and functioning in terms of standard deviations and percentiles. 20 C.F.R. § 416.926a(e)(1)(ii), (e)(2)(iii). However, test scores alone do not establish marked or extreme limitations in a domain. 20 C.F.R. §§ 416.924a(a)(1)(ii), 20 C.F.R. § 416.926a(e)(4). No single piece of information taken in isolation can establish whether the child has a "marked" limitation in a domain. 20 C.F.R. § 416.926a(e)(4)(i).

The Commissioner is to consider test scores together with reports and observations of school personnel and others. 20 C.F.R. §§ 416.924a(a) & (e)(4)(ii). In assessing functional equivalence, the ALJ also considers how much extra help the child needs, how independent he is, how he functions in school, and the effects of medication or other treatment. 20 C.F.R. § 416.926a(a). In evaluating this type of information, the ALJ considers how the child performs activities as compared to other children of the same age who do not have impairments. 20 C.F.R. § 416.926a(b). This information comes from examining and non-examining medical sources as well as "other sources," such as parents, teachers, case managers, therapists, and other non-medical sources who have regular contact with the child. *See, e.g.*, 20 C.F.R. § 416.913(a)(2), (d); Social Security Ruling (SSR) 98-1p, "Sources of Evidence," at section IV.B (Mar. 30,

1998).[3]

Here, Plaintiff contends that the ALJ erred in finding that she was not markedly limited in attending and completing tasks. (Doc. 27 at 2, 8-11). The domain of attending and completing tasks considers how well the child is able to focus and maintain attention, how well he begins, carries through, and finishes activities, including the pace at which activities are performed and the ease with which the child changes them. 20 C.F.R. § 416.926a(h)(1)(i). Claimants may be limited in attending and completing tasks if they are (1) easily startled, distracted, or overreactive to sounds, sights movements, or touch; (2) slow to focus on, or fail to complete activities of interest; (3) repeatedly sidetracked from activities or frequently interrupt others; (4) easily frustrated and give up on tasks, including ones they are capable of completing; and (5) require extra supervision to stay engaged in an activity. *Id.*; § 416.926a(h)(3)(i)-(v). The regulations summarize the typical functioning of school-age children with regard to this domain as follows:

> When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others[] and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

20 C.F.R. § 416.926a(h)(2)(iv). In making a determination of disability, "the ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting 20 C.F.R. § 416.923). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Id.* (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998), and *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)).

---

[3] Available at https://www.ssa.gov/OP_Home/rulings/ssi/02/SSR98-01-ssi-02.html (last visited Dec. 29, 2023).

**III. STANDARD OF REVIEW**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout v. Comm'r. Soc. Sec. Admin*., 454 F.3d 1050, 1055-56 (9th Cir. 2006). An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**IV. THE ALJ'S DECISION**

On September 30, 2020, the ALJ issued a decision finding that Plaintiff was not disabled.

AR. 18-33. The ALJ conducted the three-step disability analysis set forth under 20 C.F.R. § 416.924(a) for claimants under the age of eighteen. *Id*. at 19-33. The ALJ found Plaintiff was a school-age child (20 C.F.R. § 416.926a(g)(2)), and had not engaged in substantial activity since February 2, 2017, the application date (step one). *Id*. at 21. The ALJ held Plaintiff possessed the following severe impairments: selective immunoglobulin g deficiency, ADHD, and conductive hearing loss of the right ear (step two). *Id*.

Next, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). *Id*. at 22. The ALJ noted audiology testing did not indicate listing level hearing loss and the most recent testing indicated greatly improved hearing in the right ear and mild conductive hearing loss in the left ear. *Id*. In regard to Listing 112.11 (neurodevelopmental disorders), the ALJ found that "although [Plaintiff] does present with distractibility and hyperactive behavior, she does not exhibit an extreme limit in one area or marked limits in two areas of mental functioning set out in the listing." *Id*.

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the Listings. *Id*. (citing 20 C.F.R. § 416.924(d) and 416.926a)). In reaching this functional equivalence determination, the ALJ applied the "whole child" standard. *Id*. First, the ALJ considered testimony from Plaintiff's mother, Megan Goodeill. *Id*. at 23. Ms. Goodeill stated Plaintiff is chronically ill and misses a lot of school. *Id*. Ms. Goodeill stated Plaintiff is unable to participate in physical education and was removed from the cheer team because of a combination of physical issues and behavioral issues. *Id*. Further, Ms. Goodeill testified:

> "that [Plaintiff] has trouble with concentration and she is on the highest dosage of ADHD medication. Despite medication, she requires redirection and timeouts in class. She also has a sensory station in class when necessary. She goes to this area two to three times a day. She said the claimant has been doing better with reading, but she is way behind in math. She testified that the teacher said the claimant is always distracted and her hearing Impairment increases her issues with learning. At home, she refuses or is unable to dress herself or bathe herself. She drinks from a sippy cup, and she is bullied at school. Side effects from medication include difficulty getting to sleep and weight loss. Completing

> homework is a [four-hour] process because she needs redirection for each problem even though she gets less work than the other students. The claimant has chronic sensory issues and she sees someone that tells her to harm her sister. The claimant's mother said the claimant has attacked her sister with a bat."

*Id*. Next, the ALJ considered the testimony of Plaintiff. *Id*. The ALJ found:

> "The [Plaintiff] was able to testify appropriately and answered questions about her interests. She was attentive and behaved in an age appropriate fashion during the hearing. She said she does not like her sister, but she denied attacking her sister with a bat. She said her sister pulls her hair. She testified that she is not good at math, but she likes to read. She said she cared for her puppy[,] and she liked to clean, but her mom did not give her chores. The claimant said she has a hard time sitting still in class and her teacher asks her to settle down. She talks when she is not supposed to every day. She said she doesn't always feel well in the mornings. She gets a stomach ache and her feet hurt."

*Id*. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. *Id*. However, the ALJ found the statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. The ALJ noted "although [Plaintiff] clearly has issues with attention," she has been progressing in school with classroom accommodations and does not qualify for special education. *Id*. at 24. The ALJ found "there does not appear to be abnormally frequent doctor visits for illness or problems caused by absences at school" and there was some indication of noncompliance with treatment. *Id*. Instead, the ALJ determined Plaintiff is able to behave during activities she enjoys. The ALJ noted Ms. Goodeill's report that Plaintiff was not able to do physical education was not supported by the school records or Plaintiff's pediatrician report. *Id*.

The ALJ reviewed Plaintiff's treatment records regarding her behavioral problems beginning in 2016. *Id*. The ALJ noted Plaintiff exhibited difficulty with focus, hyperactivity, tantrums, aggressiveness to peers, and heard commanding voices. *Id*. Plaintiff was prescribed Adderall to treat her symptoms but was not always getting her afternoon dose "because she would fight her mother over taking it." *Id*. Ms. Goodeill reported Plaintiff had social anxiety, had no learning desire, did not like school, and did not want to leave the home. *Id*. Ms. Goodeill stated she was called to pick up Plaintiff from kindergarten in the first five weeks of school, and that she

was taking out her rage on her older sister in March 2017. *Id*. In September 2017, Plaintiff was doing well with her anger and self-control, had not been violent, and was reading better. *Id*. In November 2017, Plaintiff was still having some disruptive behavior and fidgeting, but she was learning yoga and was able to display focus. *Id*. The ALJ noted from January 2018 through November 2018, Plaintiff was doing well in school with some setbacks. *Id*. at 24-25.

The ALJ also considered Plaintiff's school records. *Id*. at 25. The ALJ found Plaintiff's school records did not indicate she was eligible for special education, but she did have a 504 plan in place allowing classroom accommodations. *Id*. Plaintiff was allowed to use sensory toys and a wiggle seat or other devices to aid in movement during instruction. *Id*. Plaintiff was seated close to the teacher, was provided breaks when needed, and given "verbal reminders prior to activating class behavior systems." *Id*. Plaintiff ended the 2017-2018 academic year at grade level in most areas but needed improvement in listening attentively and staying on task. *Id*. The ALJ noted the school records indicated Plaintiff is bright and articulate, was very social with peers, enjoyed recess, progressed well, was not academically at risk, and her medication helped a lot. *Id*. The records also reflected Plaintiff is of average intellectual ability and that she can be defiant and uncooperative. *Id*.

The ALJ reviewed teacher questionnaires completed by Plaintiff's teachers. *Id*. Yazmin Zavala, Plaintiff's kindergarten teacher, completed a questionnaire in March 2016. *Id*. The ALJ noted:

> "[Ms. Zavala] indicated the claimant was slightly below in reading and math and was at grade level in written language (Exhibit 3F, p. 4). She indicated slight to no problems in acquiring and using information, noting that her behavior had changed since the beginning of the year. She was able to do all tasks in class, but put herself down or did not listen to directions and she had trouble organizing her thoughts to write because she was so verbal (Exhibit 3F, p. 5). She was able to write simple sentences independently (Exhibit 3F, p. 5). Ms. Zavala indicated some obvious problems with attending and completing tasks with a serious problem in working without distracting [herself] or others (Exhibit 3F, p. 6). She specifically noted that the claimant tended to ask for help as soon as she was asked to work independently, she was able to work independently once given directions, she could correct mistakes in math and writing once they were pointed out, and she tended to talk to herself or others and became a distraction unless her attention was redirected (Exhibit 3F, p. 6). She noted mostly no to slight problems in interacting and relating with others, but she stated there was an obvious problem in playing

> [cooperatively] with other children, following rules, and taking turns in conversation, and a very serious problem with respecting/obeying adults in authority (Exhibit 3F, p. 7). The claimant had a modified behavioral plan and often did not believe she was at fault for her actions (Exhibit 3F, p. 7). There were no problems in moving about and manipulating objects (Exhibit 3F, p. 8). In caring for herself, Ms. Zavala noted mostly no to slight problems, but there was an obvious problem in responding appropriately to changes in her own mood and knowing when to ask for help (Exhibit 3F, p. 9). She noted the claimant had learned to control her emotions and reactions more appropriately, but continued to pout and stomp when something did not go her way (Exhibit 3F, p. 9). She did not indicate any medication problems, medications, or frequent absences (Exhibit 3F, p. 10)."

*Id*. Debra Heath, Plaintiff's first-grade teacher, completed a questionnaire in September 2017. *Id*. at 26. The ALJ found:

> "[Ms. Heath] indicated a slight problem in comprehending and doing math problems in the area of acquiring and using information, and she noted the claimant wore a microphone to assist her in hearing and she used fidget toys if needed (Exhibit 10F, p. 2). She reported only a slight problem paying attention when spoken to directly in the area of attending and completing tasks (Exhibit 10F, p. 3). The claimant had hearing support, sat closely to instruction, and she had not requested breaks of sensory toys more than three times in two months (Exhibit 10F, p. 3). There were no problems in interacting and relating with others, moving about and manipulating objects, or caring for herself (Exhibit 10F, pp. 4, 5, 6)."

*Id*. Lori Phillips, Plaintiff's second-grade teacher, completed a questionnaire in March 2019. *Id*. The ALJ determined:

> "[Ms. Phillips] reported no problems in acquiring and using information, interacting and relating with others, and caring for self (Exhibit 12E, pp. 2, 4, 6). In attending and completing tasks, she opined obvious problems in paying attention when spoken to directly, changing from one activity to another without being disruptive, and working at reasonable pace/finishing on time; serious problems in focusing long enough to finish [an] assigned activity or task, refocusing to task when necessary, organizing her own things or school materials, and completing work accurately without careless mistakes; and a very serious problem in working without distracting self or others (Exhibit 12E, p. 3). In a narrative, Ms. Phillips reported that frequently the claimant could not attend to tasks even on medication and she was all over the room bothering others despite redirection (Exhibit 12E, p. 3). With regard to moving about and manipulating objects, Ms. Phillips reported the claimant was moving much of the time and liked to mess around with items from the table or backpack (Exhibit 12E, p. 5). She also indicated the claimant was significantly better at focusing and staying on [task] with medication (Exhibit 12E, p. 7). She noted the claimant's hearing required her to wear a microphone and to sit near the speaker and even with her medication, there were days that it was very difficult for her to focus (Exhibit 12E, p. 8). However, she got along with others, and there was no limitation in caring for

> herself (Exhibit 12E, pp. 6, 8). When she has not taken her medication, which was rare, she was out of her seat constantly, disrupting others and causing chaos, but her mother was supportive and on top of things (Exhibit 12E, p. 8)."

*Id*. Next, the ALJ considered a medical source statement from Charlie Kano, MD in March 2019. *Id*. Dr. Kano first treated Plaintiff in March 2017 for a primary diagnosis of selective immunoglobulin G deficiency, ADHD, and hearing loss. *Id*. Dr. Kano "indicated a moderate impairment in acquiring and using information and attending and completing tasks; no impairment in interacting and relating with others, moving about and manipulating objects, or caring for herself; but he indicated a marked impairment in health and physical well-being.". *Id*. Dr. Kano noted Plaintiff took medication that caused anorexia and insomnia that were slight and caused a mild degree of impairment in concentration. *Id*.

The ALJ also reviewed Psychologist Dr. Faren R. Akins' opinion. *Id*. at 26-27. Dr. Akins assessed Plaintiff's ADHD was Plaintiff's only severe mental impairment. *Id*. at 26. Dr. Akins found a notation of schizophrenia in the record and determined some complaints of hallucinations that could be a basis for a diagnosis, but he did not see an actual diagnosis. *Id*. Dr. Akins noted there was also a sensory disorder noted in the record, "but he did not feel it was significant to the claimant's presentation." *Id*. Dr. Akins did not think Plaintiff had an actual diagnosis for dyslexia, as it is fairly normal for young learners to write backwards. *Id*. Dr. Akins considered listing 112.11 (neurodevelopmental disorders), but Plaintiff did not meet the listing as there were no marked domains in the B criteria.[4] *Id*.

Dr. Akins opined Plaintiff was mildly limited in understanding, remembering, or applying information and interacting with others, and moderately limited in concentration, persistence, or maintaining pace and adapting or managing oneself. *Id*. at 26-27. Dr. Akins "specifically noted teacher questionnaires to support his position" and noted improvement in functioning with medication. *Id*. at 27. With regard to the child domains, Dr. Akins opined the claimant had a less

---

[4] Although not elaborated upon during the taking of Dr. Akins' testimony, the reference to "B criteria" appears related to subsection B of listing 112.11, which requires a finding of certain impairments with respect to identified areas of mental functioning. *See Z.W. ex. rel. Caldwell v. Astrue*, No. EDCV 09-0322-CT, 2009 WL 2707451, at *5 & n.3 (C.D. Cal. Aug. 25, 2009).

than marked limit in acquiring and using information, attending and completing tasks, interacting with others, and caring for self; and had no limitation in moving about and manipulating objects. *Id*.

The ALJ concluded, "I have considered all of these reports and I give them some weight. I have also considered the overall medical record in making this decision. I give the most weight to Dr. Akins' testimony with regard to mental limitations, as he had the opportunity to review the entire record and set forth a persuasive basis for his determination at the hearing." *Id*.

The ALJ next considered the "six functional equivalence domains" regarding limitations caused by Plaintiff's impairments. *Id*. at 27-33. In terms of attending and completing tasks, the ALJ found Plaintiff "has less than marked limitation in attending and completing tasks." *Id*. at 29. The ALJ determined Plaintiff has issues focusing and maintaining concentration but had done better with medication. *Id*. The ALJ found the teacher questionnaires indicated some inconsistencies with reports in the area of functioning. *Id*. The ALJ expressly characterized the "2017 teacher report" as only indicating a "slight problem when spoken to directly, and [that Plaintiff] had not needed to use her sensory station more than three times in two months." *Id*. The ALJ concluded the March 2019 report "indicated obvious, serious, and very serious problems in the area of functioning." *Id*. The ALJ found that these inconsistent reports were not sufficient to overrule Dr. Akins' opinion that Plaintiff is less than markedly limited in attending and completing tasks. *Id*. The ALJ stated, "[i]n support, I note that [Plaintiff] was progressing well in school, she was able to pay attention and answer questions appropriately at the hearing, and she enjoyed cheer, t-ball, and dance." *Id*.

The ALJ held Plaintiff does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning. *Id*. at 33. The ALJ concluded Plaintiff has not been disabled, as defined in the Social Security Act, since February 2, 2017, the date the application was filed. *Id*.

**V. LEGAL ISSUE**

Plaintiff advances a single issue of claimed error for this Court's review: that the ALJ failed to properly analyze non-medical opinions and erred in concluding Plaintiff is less than

markedly impaired in the domain of attending and completing tasks. (Doc. 27 at 2).

## VI. DISCUSSION

In evaluating child disability cases, the opinions of a child's teachers are "valuable sources of evidence." *See* Social Security Ruling (SSR) 06-03p, "Considering Opinions & Other Evidence from Sources Who Are Not 'Acceptable Med. Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies," *available at* 2006 WL 2329939, at *3 (Aug. 9, 2006). As with lay witness testimony, the educators' opinions are "other sources" that must be considered and the ALJ should explain the weight provided to them. *Id.* at *6. In considering how much weight to give "other" source opinion evidence, the ALJ should consider: (1) "how long the source has known and how frequently the source has seen the individual"; (2) "how consistent the opinion with other evidence"; (3) "the degree to which the source presents relevant evidence to support an opinion"; (4) "how well the source explains the opinion"; (5) "whether the source has a specialty or are of expertise related to the individual's impairment(s)"; and (6) "any other factors that tend to support or refute this opinion." *Id.* at *4. The ALJ cannot disregard lay witness testimony without providing reasons germane to the witness. *Stout*, 454 F.3d at 1053; *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and the fact that the testimony 'generally repeat[s]' the properly discredited testimony of a claimant.").

Plaintiff contends the ALJ failed to consider all of the relevant evidence in her record, including the pertinent information from her teachers. (Doc. 27 at 9). Plaintiff asserts the ALJ failed to follow the standards set forth in SSR 06-03p. *Id*. Specifically, Plaintiff contends that Ms. Zavala and Ms. Phillips were "internally consistent" and "entirely consistent" with one another. As such, "the ALJ should have explained if and how he determined that, despite the consistency of limitations" as noted by the two teachers in the domain of attending and completing tasks, the reports were entitled to "essentially no weight." *Id*. at 10-11. Plaintiff notes that "Dr. Akins did not dispute that in this domain, [Ms. Zavala and Ms. Phillips'] reports were not inconsistent, and indeed demonstrated a worsening of the impairment." *Id*. at 10.

Plaintiff argues "[b]ecause the ALJ is also silent on that issue, the reviewing court has no guide to determine how the ALJ reconciled this discrepancy." *Id*. Additionally, Plaintiff contends the ALJ failed to consider the length of time each teacher had been involved with the claimant. *Id*. at 11. Plaintiff claims that this error is not harmless because "[h]ad the ALJ found one more domain to be markedly impaired, a favorable determination would result pursuant to SSR 09-1p." *Id*.

Defendant argues the ALJ considered statements from Plaintiff's teachers and provided valid reasons for giving them "some weight." (Doc. 31at 8-9). Defendant asserts "although each of Plaintiff's teachers noted some problems in the functional domain of attending and completing tasks, most of their assessments either noted no or at most 'slight' problems in this area." *Id*. at 9-11. Defendant argues the ALJ properly discounted the statements made by Plaintiff's teachers because they were inconsistent with one another. *Id*. Defendant similarly contends the ALJ properly discounted Plaintiff's teacher's testimony as they were inconsistent with the overall record. *Id*. at 11-14. Defendant points to the ALJ's conclusion that the teacher questionnaires were not consistent with the testimony from Drs. Kano and Akins and the assessment that Plaintiff had performed better in school with medication, as well as with Plaintiff's daily activities. *Id*. at 14. Defendant asserts "[t]he ALJ's finding that Plaintiff had marked limitations in no more than one functional domain was reasonable, supported by medical opinion evidence and the record as a whole, and should be affirmed." *Id*. at 15.

As set forth above, the ALJ found the teacher reports were inconsistent and were not sufficient to overrule Dr. Akins' opinion that Plaintiff is less than markedly limited in attending and completing tasks. AR. 29. The ALJ found the basis for this inconsistency was that "[t]he 2017 teacher report only indicated only [*sic*] a slight problem when spoken to directly, and she had not needed to use her sensory station more than three times in two months," while the "March 2019 report indicated obvious, serious, and very serious problems in the area of functioning." *Id*. Thus, the ALJ compared the reports of Ms. Heath, Plaintiff's first grade teacher, and Ms. Phillips, Plaintiff's second grade teacher.

The ALJ did not address the report of Ms. Zavala, Plaintiff's kindergarten teacher, in that section of the opinion. An ALJ errs by failing to "explain her reasons for disregarding…lay

witness testimony, either individually or in the aggregate." *Molina v. Astrue*, 674 F.3d 1104, 1114-15 (9th Cir. 2012). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id*. at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id*. at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ fails to "consider and comment upon" "uncontradicted lay testimony" that is relevant to the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053, 1056.

Here, the backgrounds, observations and statements of the three teachers are varying. Ms. Zavala had known Plaintiff for seven months when she wrote her report and Ms. Phillips reported having known Plaintiff for eight months when she wrote her report. *Id*. at 266, 335. In contrast, Ms. Heath stated she had known Plaintiff only for approximately six weeks (August 16, through September 28, 2017) when she wrote her report. *Id*. at 650. Thus, Ms. Heath's rating that Plaintiff had a slight problem "paying attention when spoken to directly" and no problems in 12 other key activities was based on a minimal period of observation which was orders of magnitude less than Ms. Zavala and Ms. Phillips' experience interacting with Plaintiff. *Id*. at 652.

Certainly, the ALJ would have found "inconsistencies with reports in the area of functioning" by comparing the eight months of observations by Ms. Zavala and Phillips to that of the limited observation by Ms. Heath. *Id*. at 29. Had the ALJ "consider[ed] and comment[ed] upon" Ms. Zavala's report, after teaching Plaintiff for seven months, the ALJ would have noted the report consistent with Ms. Phillips, who had rendered her report after teaching Plaintiff for eight months. *See Stout*, 454 F.3d at 1053.

Ms. Zavala's report observed Plaintiff had no problem to a slight problem in eight of the 13 key activities for attending and completing tasks. *Id*. at 337. Ms. Zavala found Plaintiff had an obvious problem in (1) focusing long enough to finish an assigned activity or task, (2) carrying

out multi-step instructions, (3) waiting to take turns, and (4) completing work accurately without careless mistakes. *Id*. Ms. Zavala assessed Plaintiff had a serious problem working without distracting self or others. *Id*. Ms. Zavala commented Plaintiff tends to ask for help as soon as she is asked to work independently and that, once she is given directions, she can work independently. *Id*. Ms. Zavala also noted Plaintiff often talks to herself or others and becomes a distraction unless her attention is directed. *Id*.

In comparison, Ms. Phillips reported Plaintiff had no problem to a slight problem in five of the 13 key activities for attending and completing tasks. *Id*. at 268. Ms. Phillips found Plaintiff had an obvious problem in (1) paying attention when spoken to directly, (2) changing from one activity to another without being disruptive, and (3) working at a reasonable pace/finishing on time. *Id*. In all three categories, Ms. Phillips provided a worse rating in comparison to Ms. Zavala. *Id*. at 268, 337. Ms. Phillips found Plaintiff had a serious problem: (1) focusing long enough to finish an assigned activity or task, (2) refocusing to task when necessary, (3) organizing own things or school materials, and (4) completing work accurately without careless mistakes. *Id*. at 268. These assessments constitute a more adverse rating in comparison to Ms. Zavala. *Id*. at 268, 337. Both teachers identified Plaintiff had problems with focusing long enough to finish an assigned activity or tasks and completing work accurately without careless mistake. *Id*. Ms. Phillips assessed Plaintiff had a "very serious problem" working without distracting self or others. *Id*. at 268. Ms. Phillips provided a more adverse rating in comparison to Ms. Zavala, and both teachers agreed Plaintiff functioned more deficiently in this key activity than any of the other 12 activities making up the attending/completing tasks domain. *Id*. at 268, 337. Separately, Ms. Phillips commented Plaintiff frequently could not attend to tasks even while on medication and she was all over the room bothering others despite redirection. *Id*. at 268.

In sum, Ms. Zavala and Phillip's reports, both given after each had interacted with Plaintiff for at least seven months, were consistent with one another in identifying Plaintiff's limitations in attending and completing tasks. The ALJ's reliance on Ms. Heath's limited report to show there were inconsistencies in the teacher questionnaires without commenting on the

internal consistencies of the reports from two sources who had a significantly longer basis for observing and commenting on Plaintiff's functionality constitutes error. *See Stout*, 454 F.3d at 1053; *see also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9ths Cir. 2014) (finding error where ALJ "improperly cherry-picked" evidence without broader consideration of overall context).

In concluding Plaintiff had less than a marked limitation in the attending/completing tasks domain, the ALJ discounted the teacher questionnaires because, the ALJ asserted, they were inconsistent and, thus, insufficient to overrule Dr. Akins' opinion, which the ALJ wholly credited. AR. 29. But the ALJ did not cite Ms. Zavala's report in his passing reference to the "teacher questionnaires" and offered no rationale either for ignoring her opinion or discounting Ms. Phillips' report. *See Noa v. Berryhill*, No. 17-cv-05147-MEJ, 2018 WL 1696819, at *7-8 (N.D. Cal. Apr. 6, 2018) (finding error where the ALJ failed to identify what portions of the lay witness testimony was inconsistent with the medical record); *Eddy v. Colvin*, No. 14-cv-01418-JE, 2016 WL 11383833 at *6 (D. Or. Sept. 1, 2016) ("the Ninth Circuit has held that it is error for an ALJ to reject lay witness testimony simply because it is not corroborated by the medical record"). Based on his failure to acknowledge Ms. Zavala's report or offer any substantive comment regarding the cited inconsistencies, the Court can only speculate as to the inconsistencies the ALJ found, or the statements—or portions thereof—that the ALJ rejected. *Noa*, 2018 WL 1696819, at *7-8; *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (the court cannot "speculate as to the grounds for the ALJ's conclusions").

Consequently, the Court finds that the ALJ erred in failing to provide germane reasons for discounting Ms. Zavala and Phillips' report. The error was not harmless. In particular, the Court cannot "confidently conclude" that no ALJ could reach a different disability determination had he fully credited the teacher's internally consistent reports. *See Stout*, 454 F.3d at 1053, 1056. *Molina*, 674 F.3d at 1117. Ms. Zavala and Phillips are teachers who worked closely with Plaintiff on an almost daily basis for over seven months and during different school years. The reports are substantially similar in assessing problems in the domain of attending and completing tasks. Given that the ALJ had already found Plaintiff had a marked limitation in the domain of health and physical well-being and that the teachers' assessments plausibly suggest that Plaintiff may

also have marked limitation in the domain of attending and completing tasks, it conceivably is a close question as to whether marked limitations exist in two domains. As such, it was incumbent upon the ALJ to clearly articulate germane reasons for discounting Ms. Zavala and Phillips' reports.

**VII. REMAND**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1998).

Here, the ALJ's decision was not supported by substantial evidence and constituted legal error that was not harmless by failing to properly consider and provide germane reasons for discounting the opinions of Plaintiff's teachers, and the Court finds it appropriate to remand the case for proper consideration of these opinions for the reasons discussed above. Because this error may be remediable, further administrative proceedings are warranted.

/ / /

/ / /

**VIII. CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 27) is GRANTED;
2. Defendant's cross-motion for summary judgment (Doc. 31) is DENIED;
3. The ALJ's decision is VACATED, and this matter is REMANDED to the ALJ for further proceedings consistent with this order; and
4. The Clerk of Court is DIRECTED to enter judgment in favor of Megan Goodeill on behalf of her minor daughter A.M.F. and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **December 29, 2023**

UNITED STATES MAGISTRATE JUDGE